UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                             Case No. 19-20124

                                                      Honorable Nancy G. Edmunds

v.

RAY S. BATTLES, JR.,

    Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE [24]**

Defendant Ray S. Battles, Jr. is charged in this matter with one count of possession of ammunition by a prohibited person in violation of 18 U.S.C. § 922(g) and one count of maintaining a drug-involved premises in violation of 21 U.S.C. § 856. (Dkt. 13.) The matter is before the Court on Defendant's motion to suppress evidence. (Dkts. 24, 32.) Defendant moves to suppress all evidence seized during the execution of a search warrant in February 2019 at his home on Blackmoor Street in Detroit, Michigan. The government opposes the motion. (Dkt. 26.) The Court held oral arguments on the motion on May 30, 2019. The Court also allowed the parties to file supplemental briefs following the Sixth Circuit's en banc decision in *United States v. Christian*, 925 F.3d 305 (6th Cir. 2019). (Dkts. 34, 35.) For the reasons set forth below, Defendant's motion is GRANTED.

    **I.    Background**

The search warrant at issue in this case was executed on February 15, 2019. The warrant was issued pursuant to an affidavit sworn by an ATF Special Agent and

approved by a federal magistrate judge on February 6, 2019. (Dkt. 24-2.) The affidavit indicated that Defendant was under investigation for the distribution of controlled substances and being in possession of a firearm. (*Id.* at PgID 70.)

The information supporting probable cause for the search was organized under two subheadings: "The Subject Premises, June to August of 2018" and "BATTLES' Facebook Account." Under the first subheading, the affidavit set forth in part that 1) the Detroit Police Department executed a state search warrant at the Blackmoor residence in June 2018 and found marijuana, prescription pills, two firearms, and assorted ammunition; 2) surveillance conducted between July and August 2018 revealed continuing evidence of drug trafficking from the Blackmoor residence; 3) ATF executed a federal search warrant on August 8, 2018 and found marijuana, prescription pills, packaging material for narcotics, a small amount of crack cocaine, two firearms, and ammunition. (*Id.* at PgID 71-73.) Under the second subheading, the affidavit set forth that the affiant conducted a review of data from Defendant's "open source Facebook social media account" on January 15, 2019. (*Id.* at PgID 74.) The most recent posts she found were 1) an image of a revolver posted on January 10, 2019, with a message "[a]bout to buy this .38 special;" 2) a message posted on December 21, 2018, stating "Wayne county prosecutor trying to take my house they say I am running a drug operation . . . leave me alone . . ."; 3) an image of a rifle posted on December 4, 2018, with a message stating, "AR 15 do not make me bring my baby back out;" 4) a message on November 28, 2018, stating "I hate trapping I can't never go no where;"[1] and 5) a

---

[1] The affiant explained that "[t]rapping is a slang term for selling drugs and is usually associated with the residence where the drugs are sold." (Dkt. 24-2, PgID 77.)

2

message on October 18, 2018, stating "[w]ho need perks 10 a pop."[2]  (*Id.* at PgID 75-77.)

## II. Analysis

Defendant argues the February 2019 warrant lacked probable cause because the information set forth in the underlying affidavit regarding the searches and surveillance that took place in the summer of 2018 was stale and the more recent Facebook posts failed to demonstrate a nexus between the suspected criminal activity and the Blackmoor residence.  The government argues that Defendant's Facebook posts were sufficient to establish ongoing criminal activity at the Blackmoor residence and even if the affidavit lacked probable cause, it is saved by the *Leon* good-faith exception.

### A. Probable Cause

To determine whether probable cause for a search exists, the judge issuing a warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  While the magistrate judge's determination of probable cause is owed "great deference," the reviewing court must "ensure that the magistrate had a substantial basis for concluding that probable cause existed."  *Id.* at 236, 238-39 (internal quotation marks and citation omitted).

---

[2] The affiant explained "'10 a pop' means he is selling the pills for ten dollars each, consistent with the street value for Percocet."  (Dkt. 24-2, PgID 77.)

3

In order to establish probable cause, there must be "a nexus between the place to be searched and the evidence sought." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (internal quotation marks and citation omitted). "In other words, the affidavit must suggest that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought and not merely that the owner of property is suspected of a crime." *Id.*

Moreover, "stale information cannot be used in a probable cause determination." *United States v. Perry*, 864 F.3d 412, 414 (6th Cir. 2017) (quoting *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009)). Temporal proximity is necessary "to eliminate the possibility that a transfer in ownership or a cessation of illegal activity had not taken place." *United States v. Hython*, 443 F.3d 480, 486 (6th Cir. 2006). Whether information is stale is a flexible inquiry that does not "create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001) (internal quotations and citation omitted). In considering the length of time between the events listed in the affidavit and the application for the warrant, courts consider the following factors:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?), (2) the criminal (nomadic or entrenched?), (3) the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), and (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Young*, 847 F.3d, 328, 347 (6th Cir. 2017) (quoting *Frechette*, 583 F.3d at 378).

With regard to the first factor of the staleness inquiry, "the passage of time becomes less significant when the crime at issue is ongoing or continuous." *Hython*,

4

443 F.3d at 485. The sale of drugs out of a residence "is not inherently ongoing" but rather "exists upon a continuum ranging from an individual who effectuates the occasional sale from his or her personal holdings of drugs to known acquaintances, to an organized group operating an established and notorious drug den." *Id.* Criminal activity that is closer to the "drug den" end of the continuum may overcome a claim of staleness. *See id.*

The first factor weighs slightly in favor of Defendant. While the affidavit establishes that there was criminal activity during the summer of 2018 at the Blackmoor residence, the affidavit, as a whole, indicates that Defendant is closer to an individual engaged in the occasional sale of drugs than the drug den end of the continuum. *Cf. Young*, 847 F.3d at 346 (finding the information in the affidavit not stale due to evidence of a regenerating conspiracy where affidavit identified defendant as a ranking member of a street gang who supplied cocaine to gang members and wiretaps identified a number of locations being used to store drugs and cash, including his home); *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) (finding the information in the affidavit not stale due to evidence that the narcotics trafficking was continuous and ongoing, including twelve controlled buys from the dwelling and a tip from an informant that a package was sent from the residence to a known drug dealer less than one month prior to the execution of the warrant).

The second factor also weighs in favor of Defendant. The affidavit states that "as of September 7, 2018," Defendant remained the registered owner of the premises, but acknowledges that at the time of the August raid, a database query showed that the

home was owned by the City of Detroit. (Dkt. 24-2, PgID 75-76.) Therefore, the affidavit did not show that Defendant was entrenched at the Blackmoor location.

And with regard to the third and fourth factors, while "narcotics underlying an ongoing conspiracy to traffic drugs are likely to be at an operational basis," "generally speaking, narcotics are easily consumable and mobile." *See Young*, 847 F.3d at 348. Here, as discussed above, there is no evidence of an ongoing conspiracy, and thus, these factors weigh in favor of a finding of staleness. In sum, a consideration of the relevant factors leads the Court to conclude that the information in the affidavit regarding the past searches was stale.

Stale information may be "refreshed" by more recent information that corroborates the stale information. *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1988); *see also Christian*, 925 F.3d at 310-12 (finding probable cause without a consideration of whether the older information in the affidavit was stale because the recent surveillance of the home and observations by officers were "independently sufficient for probable cause"). Here, the only recent investigatory effort set forth in the affidavit was a review of Defendant's Facebook page. The Court finds that the Facebook posts did not refresh the stale information for a number of reasons. First, the most recent Facebook post referencing any drug activity was dated November 28, 2018, over two months prior to the date of the affidavit. Moreover, even though the Facebook posts may be construed to indicate that Defendant continued to effectuate the occasional sale of drugs thru November 2018, they do not indicate where these sales were taking place. As discussed above, the information in the affidavit made it clear there was some uncertainty regarding whether Defendant was still connected to

6

the Blackmoor residence. Therefore, the Facebook posts do not provide a nexus between the evidence sought and the place to be searched.[3] *See United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016) (noting that "reliable evidence connecting the [defendant]'s ongoing criminal activity to the residence" is required for a showing of probable cause). Similarly, Defendant's Facebook posts regarding guns do not establish that Defendant actually possessed guns or if he did, that those guns would be found at the Blackmoor residence.[4] Therefore, the Court finds that there was no reliable recent information that corroborates or refreshes the stale information in the affidavit. *Cf. United States v. Thomas*, 605 F.3d 300, 309-10 (6th Cir. 2010) (finding probable cause even though the confidential informant's tip was over eight months old because marijuana growing is a long-term operation and the property electrical bills for the six months leading up to the submission of the warrant application corroborated and refreshed the informant's tip).

In sum, the affiant here relied almost entirely on stale information that had previously formed the basis for a search of the Blackmoor residence. The only recent investigatory effort undertaken to corroborate or refresh the stale information was a perusal of Defendant's Facebook page over three weeks prior to the application for the

---

[3] The government states that paragraph 13 of the affidavit which references a Facebook post on "January 15, 2018" contains a typographical error and should be read as "January 15, 2019." Even if the Court accepts the government's assertion, this does not change the Court's analysis. That post was a message indicating that Defendant had prescription pills for sale but did not include any reference to the Blackmoor residence. (*See* dkt. 24-2, PgID 75.)

[4] The government itself describes these posts as indicative "that [Defendant] still possessed *or could access* an AR-15 assault rifle" on December 4, 2018 "and that he had recently purchased *or intended to purchase* a .38 special caliber handgun" on January 10, 2019. (Dkt. 28, PgID 169 (emphasis added).) Thus, any inferences drawn from these posts were admittedly speculative.

warrant. That effort revealed older messages of possible criminal activity without any reference to where it was taking place. Therefore, the Court finds that the search warrant at issue was not supported by probable cause.

### B. *Leon* Good-Faith Exception

The exclusionary rule does not bar the admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984). This good-faith exception to the exclusionary rule does not apply, however, when:

> (1) a warrant is based on a knowing or reckless falsity contained in the affidavit; (2) a warrant is issued by a magistrate who abandons his judicial role by failing to be neutral and detached, instead serving as a rubber stamp for law enforcement; and (3) a warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

*United States v. Rodriguez-Suazo*, 346 F.3d 637, 645 (6th Cir. 2003) (internal quotation marks and citations omitted). Defendant relies on the first and third limitations to the good-faith exception.

Defendant argues that the affidavit here was so lacking in indicia of probable cause that an officer's reliance on it was not objectively reasonable. The Court agrees that any officer knows that stale information must be corroborated by more recent investigatory efforts and that those efforts should provide a nexus to the place to be searched.

But even if an officer's reliance on the affidavit at issue here could be construed as objectively reasonable, the *Leon* good-faith exception does not apply for another reason. As Defendant notes, the affiant excluded information from the affidavit that

8

undermines the probable cause determination in this case.[5]  More specifically, as a part of her investigation of Defendant, the affiant was involved in an attempted controlled purchase on September 14, 2018 at the Blackmoor location, during which the informant was told "that they are not on Blackmoor Street anymore but instead are on Outer Drive."  (Dkt. 35-2, PgID 243.)

As indicated by the Sixth Circuit in *United States v. West*, 520 F.3d 604, 611-12 (6th Cir. 2008), the first limitation to the good-faith exception not only applies to affidavits with knowing or reckless falsities but also to those with material omissions.  In that case, the court found the good-faith exception inapplicable because the affidavit included information regarding a confession but omitted information regarding subsequent investigative efforts that undermined the confession.  *See id.*

Similar to *West*, here, the affidavit included information regarding the past warrants executed and evidence seized at the Blackmoor residence but omitted information regarding the subsequent failed controlled purchase in which the informant was specifically told that they were no longer operating out of the Blackmoor residence.  Thus, the affidavit gave "an incomplete and misleading" picture to the magistrate judge, "evinc[ing] a reckless disregard for the truth" that renders the good-faith exception

---

[5] Under *Franks*, a defendant is entitled to an evidentiary hearing to establish whether a material omission was made knowingly or recklessly if the omission is necessary to the finding of probable cause, so that the court can "consider the affidavit including the omitted portions and determine whether probable cause still exists."  *See United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997); *see also United States v. Speer*, 419 F. App'x 562, 571 (6th Cir. 2011) (unpublished).  Here, as discussed above, even without the inclusion of the omitted information, the affidavit lacked probable cause and, thus, a *Franks* hearing is not needed.  The Court only considers the omission for purposes of its good-faith exception analysis.

inapplicable to this case. *See id.*; *cf. Christian*, 925 F.3d at 313 (noting that the good-faith exception was especially applicable in that case "given the utter lack of police wrongdoing"). While the informant attempted to purchase narcotics from a person other than Defendant, the information obtained was highly relevant to whether drugs would be found at the Blackmoor residence. And to the extent the government notes that the attempted controlled purchase took place in September 2018, several months prior to the execution of the warrant, this only bolsters the Court's finding that the affidavit lacked probable cause because officers should have conducted more recent investigatory efforts to refresh and corroborate the stale information. In sum, the affidavit in this case is not saved by the *Leon* good-faith exception.

### III. Conclusion

For the reasons set forth above, the Court hereby GRANTS Defendant's motion to suppress evidence. All evidence seized during the execution of the February 6, 2019 warrant is suppressed.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: July 18, 2019


I hereby certify that a copy of the foregoing document was served upon counsel of record on July 18, 2019, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager